Amber M. Mettler (11460)
W. Danny Green (16212)
SNELL & WILMER L.L.P.
15 West South Temple, Suite 1200
Salt Lake City, Utah  84101-1531
Telephone:  (801) 257-1900
Facsimile:  (801) 257-1800
amettler@swlaw.com
dgreen@swlaw.com

Morgan T. Nickerson (*Pro Hac Vice Pending*)
K&L GATES, LLP
One Lincoln Street
Boston, MA 02111
Telephone: (617) 261-3134
Facsimile: (617) 261-3175
Morgan.nickerson@klgates.com

*Attorneys for Plaintiff Nutramax Laboratories, Inc.*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH**

| | | |
|---|---|---|
| Nutramax Laboratories, Inc., | ) | Civil Action No. |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **VERIFIED COMPLAINT** |
| | ) | |
| Hashtag Fulfillment LLC d/b/a Nutra Max Labs, Inc, Private Label Sk.In, NA, LLC d/b/a Nutra Max Labs Inc, Spinzar Fulfillment Corporation d/b/a Nutra Max Labs Inc, and Does 1-10, | ) ) ) ) ) ) | Jury Trial Requested |
| | ) | |
| Defendants. | ) | |

**INTRODUCTION**

Plaintiff Nutramax Laboratories, Inc. ("Plaintiff" or "Nutramax") as and for its Verified Complaint ("Complaint") against Defendants Hashtag Fulfillment, LLC d/b/a Nutra Max Labs Inc ("Hashtag Fulfillment"), Private Label Sk.In, NA, LLC d/b/a Nutra Max Labs Inc ("PLS"),

Spinzar Fulfillment Corporation ("Spinzar Fulfillment") d/b/a Nutra Max Labs Inc, and Does 1-10 (collectively, "Defendants"), alleges upon personal knowledge as to its own acts and as to events taking place in its presence, and upon information and belief as to all other facts, as follows:

## NATURE OF THIS ACTION

1. Plaintiff Nutramax owns the trademark that forms the basis for this Civil Action. For several decades, Nutramax has researched, marketed, distributed, and sold high quality nutritional supplement products for human use throughout the United States and internationally, under its trademarked name, NUTRAMAX LABORATORIES®.

2. Defendants advertise, distribute, offer to sell, and sell "natural" supplements for human use under the name "Nutra Max Labs Inc." Among the supplements Defendants offer for sale are "Steelcut Testosterone" and "Muscle Boost XT," which both purport to "not only result in improved muscle growth, but also improve[] many factions of the human body which lead to better muscle building" (the "Products").

3. Defendant Hashtag Fulfillment's contact information is listed on bottles of the Products. In particular, bottles of Steelcut Testosterone and Muscle Boost XT contain Defendant Hashtag Fulfillment's P.O. Box address along with the name, "Nutra Max Labs Incorporated."

4. Defendants offer to sell and sell the Products through various print and web-based advertisements and webpages (the "Infringing Websites"). Defendants do business using various iterations of Plaintiff Nutramax's name and the Mark, as defined herein.

5. Defendants offer "free" trials of the Products, in which the consumer is provided a full size bottle of the Product for nothing more than the cost of shipping. Defendants represent that they will not charge the consumer the full bottle price until the trial period has expired. But consumers across the country complain that Defendants charge the approximately $95 full bottle

2

price <u>before</u> the expiration of the trial period, and also complain that they are unable to obtain a refund or cancel the recurring monthly subscription that follows.

6. After purchasing Defendants' Products, consumers see the approximately $95 per bottle charge associated with "Nutra Max" on their credit card statements. As a result, consumers are fraudulently misled into believing that *Plaintiff Nutramax* is the supplier of the products and is behind this scam.

7. Bottles of Steelcut Testosterone and Muscle Boost XT contain contact information for "Nutra Max Labs Incorporated, P.O. 23793, St. Petersburg, FL 33742," but do not contain a phone number to contact the manufacturer or the distributor. Upon information and belief, P.O. Box 23793, St. Petersburg, FL 33742 is an address associated with Defendant Hashtag Fulfillment. Thus, when consumers are dissatisfied with their Steelcut Testosterone or Muscle Boost XT products, they research "Nutra Max" or "Nutramax" and are directed to *Plaintiff Nutramax's* customer service department.

8. Because Defendants operate under the name "Nutra Max Labs Inc," consumers are fraudulently misled into believing that *Plaintiff Nutramax* is the supplier of the products and is behind this scam.

9. As a result of Defendants' trademark infringement and fraud, Nutramax is suffering a loss to the enormous goodwill it has created in its intellectual property and business. Further, Defendants' false and misleading designation of origin of its products causes ongoing customer confusion and irreparable harm in the marketplace. This action seeks permanent injunctive relief and damages for Defendants' ongoing trademark infringement, fraud, and unfair trade practices.

**JURISDICTION AND VENUE**

10. This Court has jurisdiction over the subject matter of this Complaint pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338(a) and (b), as these claims arise under the Trademark Laws of the United States.

11. This Court has supplemental jurisdiction over the pendent state law claims pursuant to 28 U.S.C. § 1367(a).

12. This Court has personal jurisdiction over Defendants in this district, as Defendants transact business in Utah, ship the products at issue in the litigation to and from Utah, engage in contracts in Utah, and are otherwise subject to jurisdiction in this state. Moreover, Defendants sell and offer to sell products directly to persons residing in this judicial district via the Infringing Websites.

13. Venue is proper in this judicial district under 28 U.S.C. § 1391(b) and (c).

**PARTIES**

14. Plaintiff Nutramax Laboratories, Inc. is a corporation duly organized and existing under the laws of South Carolina, with its principal office located at 946 Quality Drive, Lancaster, South Carolina.

15. Defendant Hashtag Fulfillment, LLC d/b/a Nutra Max Labs Inc, is a limited liability company duly organized and existing under the laws of Florida. Upon information and belief, Hashtag Fulfillment has its principal place of business at 3130 Tyrone Boulevard, St. Petersburg, Florida 33710. Defendant Hashtag Fulfillment's current corporate status is "inactive - administratively dissolved for annual report."

16. Defendant Private Label Sk.In, NA LLC d/b/a Nutra Max Labs Inc, is a limited liability company duly organized and existing under the laws of Delaware. Upon information

and belief, PLS has a principal place of business at 7205 30th Avenue N., St. Petersburg, FL 33710.

17. Defendant Spinzar Fulfillment Corporation d/b/a Nutra Max Labs Inc, is a corporation duly organized and existing under the laws of Utah. Upon information and belief, Defendant Spinzar Fulfillment has a principal place of business at 14925 South Heritage Crest Way, Bluffdale, UT 84065.

18. Upon information and belief, Does 1-10 are the individual owners and operators of Defendants Hashtag Fulfillment, PLS, and Spinzar Fulfillment, all d/b/a Nutra Max Labs Inc. The true names of the Doe Defendants 1-10 are unknown to Nutramax at this time. Nutramax believes that information obtained in discovery will lead to the identification of the Doe Defendants 1-10. Nutramax will amend this Complaint to include the names and residences of the Doe Defendants 1-10 once it has ascertained the same. For purposes of this Complaint, all allegations and claims asserted against the Defendants include and are asserted against the Doe Defendants 1-10 as well.

## FACTS GIVING RISE TO THIS ACTION

19. Nutramax licenses its intellectual property, including the Mark, as defined herein, to certain subsidiary companies who in turn research, market, distribute, and sell high quality nutritional supplements. These products are world-renowned for their high quality.

20. These health products embodying Nutramax intellectual property are sold throughout Utah, the United States, and the world, through a network of authorized resellers.

### A. *Nutramax's Trademark Uses*

21. Since at least as early as 1992, long prior to the infringing acts alleged herein, Nutramax has continuously used the NUTRAMAX mark in commerce in the State of Utah in

this judicial district and throughout the United States and the world, in connection with the manufacture and sale of a wide variety of products that support human health.

22. Nutramax uses, owns, and has registered on the Principal Register of the United States Patent and Trademark Office the following mark relevant to this action (the "Mark"):

| **Mark** | **Reg. No.** | **Reg. Date** | **Class/Goods** |
|---|---|---|---|
| NUTRAMAX LABORATORIES | 2231260 | Mar. 16, 1999 | Dietary food supplements |

23. Nutramax's federal trademark registration was duly and legally issued, is valid and subsisting, and constitutes *prima facie* evidence of Nutramax's exclusive ownership of the Mark. The Mark is famous and incontestable under federal trademark law.

24. Nutramax has invested many millions of dollars and has expended significant time and effort in advertising, promoting and developing its trademarks and other intellectual property, including the Mark, throughout the United States. As a result of such advertising and promotion, Nutramax has established substantial goodwill and widespread recognition in the Mark, which has become associated <u>exclusively</u> with Nutramax, by both customers and potential customers, as well as the general public at large.

25. To create and maintain such goodwill among its customers, Nutramax has taken substantial steps to ensure that products bearing its trademarks, including the Mark, are of the highest quality. As a result, Nutramax trademarks, including the Mark, have become widely known and are recognized throughout the United States as symbols of high quality products. Customers throughout the United States recognize the Nutramax name, upon which they rely for high quality products.

6

26. As a result of, *inter alia*, the care and skill exercised by Nutramax in the conduct of its business, the high quality of the goods sold under Nutramax's trademarks, including the Mark, and the extensive advertising, sale, and promotion by Nutramax of its products, the Mark has acquired secondary meaning in the United States, including in the State of South Carolina.

27. Nutramax is not now, nor has it ever been, affiliated with Defendants and has not now, nor has it ever, given them permission to use its Mark.

### B. Defendants' Product Sales Under the Name "Nutra Max Labs Inc"

28. Defendants manufacture, package, distribute, advertise, market, offer to sell, and sell "natural" supplements for human use called "Steelcut Testosterone" and "Muscle Boost XT," which both purport to "not only result in improved muscle growth, but also improve[] many factions of the human body which lead to better muscle building" (the "Products").

29. Defendants offer to sell and sell the Products through the Infringing Websites. Defendants employ various counterfeit iterations of Plaintiff Nutramax's name and the Mark, as defined herein, in their advertisements and on webpages, including but not limited to on the Infringing Websites. For example:

**OUR STORY**

Nutra Max Labs Inc, was founded on the goal of providing people with essential nutrition to help them avoid any short-comings. People who aim to build muscle might even end up using steroids and other shortcuts. The aim of Nutra Max Labs is to help these people with a gradual, yet natural muscle growth.





> **Return Address:**
> Nutramax Labs Inc
> P.O. BOX 23793 Saint Petersburg FL 33742 .

30. Defendant Hashtag Fulfillment's P.O. Box address is listed on bottles of the Products, which are sold under a counterfeit use of the "Nutra Max Labs Inc." Specifically, bottles of Steelcut Testosterone and Muscle Boost XT contain Defendant Hashtag Fulfillment's P.O. Box address along with the name, "Nutra Max Labs Incorporated."

31. Defendants Hashtag Fulfillment, PLS[1], and Spinzar Fulfillment worked together to create labels and packaging for bottles of the Products, to advertise and create demand for the Products, and to take, fulfill and ship orders for the Products.

### C. Defendants' Trademark Infringement and Fraudulent Conduct

32. Through its various advertisements and webpages, Defendants offer consumers the opportunity for a free trial of the Products. Defendants state that the offer includes "not only a 14 day trial use of Steelcut [or Muscle Boost XT], but also an automatic enrollment in the Company's monthly home delivery program ("Subscription")." After the expiration of the trial period, the consumer is charged for his/her first approximately $95 bottle plus $4.95 shipping. Consumers have 14 days <u>from the order date</u> to try the product (it takes 3 to 5 days to ship product to the consumer), and only if the customer cancels <u>in writing</u> and returns the unused

---

[1] Upon information and belief, Defendant PLS purchased the assets of Defendant Hashtag Fulfillment in May of 2016. However, Hashtag Fulfillment continued to engage in the above described actions after it was purchased by PLS. Moreover, Defendant Hashtag Fulfillment continued to exist as an active limited liability company under the laws of Florida until September 22, 2017.

product within the 14-day trial period will s/he avoid the full charge and automatic enrollment in the "Subscription" service.

33. The contact information Defendants provide in connection with this trial offer is "Nutramax Labs Inc P.O. Box 23793 Saint Petersburg FL 33742.  1-855-796-2661."

34. However, that phone number directs callers to a generic "customer service" center not specific to any of the Defendants.  And bottles of the Products do not contain a phone number for the Defendants.

35. Consumers have complained that Defendants' trial offers are a scam.  Consumers report that the 14-day trial begins on the day the Product is <u>ordered</u>, not the day it ships or is received, so that consumers are given only a few days with the Product before their credit card is charged the full $95 monthly fee.

36. When a consumer orders a free trial bottle of one of the Products, the transaction is charged to "Nutra Max" on his/her credit card statement.

37. Due to the lack of contact information for Defendants, when consumers are dissatisfied with their purchase or want to cancel the subscription for which they were automatically enrolled, they research "Nutra Max" and are directed to *Plaintiff Nutramax's* customer service department.

38. Due to Defendants' failure to provide correct contact information and their holding themselves out as Nutramax Labs, consumers wishing to cancel their order or file a complaint research "NutraMax Labs" and are directed to *Plaintiff Nutramax's* business and contact information.

39. Consumers mistakenly believe that *Plaintiff Nutramax* sells the Products and is the entity behind these scams.

40. Consumers have lodged numerous complaints with Plaintiff Nutramax's customer service department based on Defendants' fraudulent use of its name in connection with this scam.

41. Defendants perpetrate substantially similar scams through other similarly setup websites.

42. Defendants are using Nutramax's registered Mark to deflect blame for their nefarious conduct and in an effort to mask their scams and to profit on their misconduct to the detriment of Nutramax.

43. Defendants' use of the Mark to carry out these scams was done and continues to be done willfully and with bad faith intent to confuse the public.

44. Defendants' use of the Mark to carry out these scams has significantly diluted the value and distinctive quality of Nutramax's registered Mark, has caused financial loss, and has caused and continues to cause, irreparable harm to its goodwill and reputation with consumers.

## COUNT I

### Trademark Infringement - 15 U.S.C. § 1114

45. Nutramax hereby realleges and incorporates by reference each and every allegation of the above paragraphs of this Verified Complaint as if fully set forth herein.

46. Defendants' improper and counterfeit use of Nutramax's famous Mark in connection with the scams described herein is likely to cause and actually causes confusion and mistake, and/or deceives consumers as to the affiliation, connection, or association of Defendants and their products and services with Plaintiff Nutramax and its products and services.

47. Defendants' are not authorized and have never been authorized to use Nutramax's Marks.

48. Defendants know that their conduct is likely to so mislead consumers.

49. Defendants' trademark infringement has been and is deliberate, willful, malicious and fraudulent because Defendants are intentionally capitalizing on the name, assets, and goodwill of Nutramax and its famous Mark.

50. As a direct and proximate result of Defendants' conduct, Nutramax has been damaged in an as yet undetermined amount and is entitled to the remedies and compensation as provided in 15 U.S.C. § 1114, 1116, and 1117. Nutramax has no adequate remedy at law for Defendants' continuing violations of the Lanham Act, as set forth herein.

## COUNT II

### False Designation of Origin / Unfair Competition - 15 U.S.C. § 1125

51. Nutramax hereby realleges and incorporates by reference each and every allegation of the above paragraphs of this Verified Complaint as if fully set forth herein.

52. Defendants' improper and counterfeit use of Nutramax's Mark constitutes a false designation of origin, a false or misleading description of fact or an unfair business practice or competition. The foregoing activities are likely to cause confusion as to the origin, sponsorship or approval of the various trial offers and products described above.

53. Defendants' use of Nutramax's Mark in connection with the scam described above is deliberate, willful, malicious, and fraudulent.

54. Defendants' are not authorized and have never been authorized to use Nutramax's Marks.

55. As a direct and proximate result of Defendants' conduct, Plaintiff Nutramax has been damaged in an as yet undetermined amount and is entitled to the remedies and compensation as provided in 15 U.S.C. § 1114, 1116 and 1117. Plaintiff Nutramax has no

adequate remedy at law for Defendants' continuing violations of the Lanham Act, as set forth herein.

## COUNT III

### Common Law Fraud

56. Nutramax hereby realleges and incorporates by reference each and every allegation of the above paragraphs of this Verified Complaint as if fully set forth herein.

57. Defendants' use of Nutramax's name and Mark is a false representation of fact. Nutramax is not now, nor has it ever been, affiliated with Defendants, the Products, or the trial offers and scams described above.

58. That false representation of fact is material because it has misled and continues to mislead consumers into believing that Plaintiff Nutramax is affiliated with Defendants, the Products, and/or the trial offers and scams described above.

59. Defendants have made and continue to make this sort of material misrepresentation of fact with full knowledge of its falsity.

60. Defendants' use of Nutramax's name and Mark in connection with the scams described above is intentional.

61. Consumers are unaware that Plaintiff Nutramax is not affiliated with Defendants, the Products, or the trial offers and scams described above and rely on Defendants' representation that it is. This is clear from the fact that consumers have addressed complaints about these scams to consumer protection agencies naming Plaintiff Nutramax as the offending entity.

62. Consumers' reliance on Defendants' false representation is reasonable, as Plaintiff Nutramax's name shows up on consumers' credit card statements in connection with the purchase of the Products.

63. Both Plaintiff Nutramax and consumers are proximately harmed by Defendants' false representation; consumers are left without any redress for the pecuniary injury suffered due to the scam trial offers, and Plaintiff Nutramax suffers extraordinary harm to its reputation and goodwill (both as a business and of its registered Mark) as previously explained.

64. As a result of Defendants' fraudulent conduct, Nutramax has suffered and continues to suffer damages in an amount yet to be determined.

## COUNT IV

### Utah Unfair Competition Act

65. Nutramax hereby realleges and incorporates by reference each and every allegation of the above paragraphs of this Verified Complaint as if fully set forth herein.

66. Defendants' past and continued use of Nutramax's Mark with the intent to deceive and defraud the public into believing that the Products and the trial offer scams are affiliated with Plaintiff Nutramax, constitutes unfair competition in violation of the Utah Unfair Competition Act - Utah Code Ann. §§ 13-5a-102-103.

67. Said conduct described above affects the public's interest; is unlawful, unfair, or fraudulent; and leads to a material diminution in value of Nutramax's intellectual property.

68. Defendants' actions are a willful and knowing violation of Utah Code Ann. §§ 13-5a-102-103, with total disregard for the rights of Plaintiff Nutramax as well as the public interest.

69. As a direct result of Defendants' unfair trade practices, Nutramax has been injured and damaged, and is entitled to recover treble damages, costs, and attorneys' fees.

## COUNT V
**Preliminary and Permanent Injunction**

70. Nutramax hereby realleges and incorporates by reference each and every allegation of the above paragraphs of this Verified Complaint as if fully set forth herein.

71. Defendants' actions, set forth above have caused and threaten to cause Nutramax irreparable harm for which there is no adequate remedy at law.

72. Nutramax has no adequate remedy at law because monetary damages are incapable of protecting Nutramax from Defendants' continuing and future trademark infringement and other violations of law.

73. Unless enjoined by this Court, Nutramax will be irreparably harmed by Defendants' actions.

74. Nutramax is likely to succeed on the merits.

75. The balance of equities favors Nutramax. The potential harm to Defendants in the event this injunction is granted is nonexistent as it would only be prevented from profiting from its current and future trademark infringement and other violations of law.

76. The public interest is served in preventing and rectifying Defendants' actions, and will not be disserved by entry of the requested injunctive relief.

**WHEREFORE**, the Plaintiff, Nutramax, requests that this Honorable Court:

A. Enter judgment in favor of the Plaintiff Nutramax and against Defendants on all counts.

B. Enter a preliminary and permanent injunction restraining and enjoining Defendants, their agents, divisions, subsidiaries, officers, agents, employees, attorneys, and all those persons in active concert or participation with them from:

      (1)    Doing business under, or otherwise using, any of Plaintiff Nutramax's intellectual property, including but not limited to the Mark;

      (2)    Making false and misleading statements of fact in connection with the Products, and any other products marketed, distributed, or sold by Defendants, the Infringing Website, or any other fake websites existing now or in the future that are not actually affiliated with Plaintiff Nutramax, including, but not limited to the false statements identified above;

C.    Enter a preliminary and permanent injunction ordering Defendants to engage in corrective actions to cure the misperceptions its false statements have caused in the marketplace;

D.    Award Nutramax its actual damages incurred as a result of Defendants' wrongful acts as described herein;

E.    Award Plaintiff Nutramax treble damages pursuant to 15 U.S.C. § 1117 and/or Utah's Unfair Competition Act;

F.    Award Plaintiff Nutramax up to $2,000,000.00 in statutory damages pursuant to 15 U.S.C. § 1117.

G.    Award punitive damages to deter future similar conduct by Defendants pursuant to Utah's Unfair Competition Act;

H.    Award the Plaintiff Nutramax its reasonable attorneys' fees and costs;

I.    Award the Plaintiff Nutramax pre-judgment and post-judgment interest in the maximum amount allowed under the law;

J. Adjudge that Defendants have willfully and deliberately engaged in false advertising and unfair practices and find that this is an "exceptional case" under the Lanham Act; and

K. Award such other and further relief as it deems just and reasonable.

## Jury Trial Claim

Plaintiff Nutramax claims a trial by jury on all issues so triable.

Dated: October 31, 2017  　　　　　　　　　　*/s/ Amber M. Mettler*
　　　　　　　　　　　　　　　　　　　　　Amber M. Mettler (11460)
　　　　　　　　　　　　　　　　　　　　　W. Danny Green (16212)

　　　　　　　　　　　　　　　　　　　　　*Attorneys for Plaintiff Nutramax*
　　　　　　　　　　　　　　　　　　　　　*Laboratories, Inc.*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | | |
|---|---|---|
| Nutramax Laboratories, Inc., | ) | Civil Action No. _____ |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **VERIFICATION** |
| | ) | |
| Hashtag Fulfillment, LLC d/b/a Nutra Max Labs, Inc, Private Label Sk.In, NA, LLC d/b/a Nutra Max Labs Inc, Spinzar Fulfillment Corporation d/b/a Nutra Max Labs Inc, and Does 1-10, | ) ) ) ) ) ) | |
| Defendants. | ) | |

Troy R. Henderson, D.C, being first duly sworn, deposes and says that: he is Executive Vice President of Nutramax Laboratories, Inc.; he has read the foregoing Verified Complaint; and he believes the facts and allegations of the Verified Complaint to be accurate based on his own personal knowledge, the inquiry of other employees, or the review of documentation.

_____
Troy R. Henderson, D.C.
Nutramax Laboratories, Inc.

SWORN and subscribed to before me
this 31st day of Oct, 2017

_____ (L.S.)
Notary Public for South Carolina
My commission expires: _

18