IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| NUTRAMAX LABORATORIES, INC., <br><br> Plaintiff, <br><br> v. <br><br> HASHTAG FULFILLMENT, LLC; PRIVATE LABEL SK.IN NA, LLC; SPINZAR FULFILLMENT CORPORATION; and DOES I – X, <br><br> Defendants. | **MEMORANDUM DECISION AND ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS** <br><br><br> Case No. 2:17-cv-1174 <br><br> District Judge Jill N. Parrish |

Before the court are motions to dismiss filed by Defendant Hashtag Fulfillment (ECF No. 29) and by Defendant Private Label Sk.In (ECF No. 30). The motions are substantially similar, and both argue that this court does not have personal jurisdiction over them in this action. For the reasons below, those motions are denied.

## I.   BACKGROUND

Plaintiff Nutramax Laboratories, Inc. ("Nutramax") is a South Carolina corporation headquartered in Lancaster, South Carolina. For decades, it has sold nutritional supplements in the United States and abroad under the trademarked name NUTRAMAX LABORATORIES. Defendant Hashtag Fulfillment, LLC ("Hashtag") is or was (there is some debate) a Florida LLC with a principal place of business in St. Petersburg, Florida. Defendant Private Label Sk.In NA, LLC ("Private Label") is a Delaware LLC with a principal place of business also in St. Petersburg, Florida. Defendant Spinzar Fulfillment Corporation ("Spinzar") is a Utah corporation with a principal place of business in Bluffdale, Utah.

Nutramax's verified complaint alleges that Hashtag, Private Label, and Spinzar all "manufacture, package, distribute, advertise, market, offer to sell, and sell 'natural' supplements" that include "Steelcut Testosterone" and "Muscle Boost XT." ECF No. 2 at ¶ 28. Those products, and the defendants' websites advertising them, allegedly employ counterfeit iterations of Nutramax's name and trademark. *Id.* at ¶ 29.

In this action, Nutramax brings claims for trademark infringement, false designation of origin, violations of the Utah Unfair Competition Act, and a request for preliminary and permanent injunction.

## II. PERSONAL JURISDICTION

Hashtag and Private Label move to dismiss Nutramax's verified complaint for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure.[1] As the plaintiff, Nutramax bears the burden of establishing personal jurisdiction. *Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011). "[B]ut where, as here, the issue is raised early on in litigation, based on pleadings (with attachments) and affidavits, that burden can be met by a *prima facie* showing." *Id.* In determining whether Nutramax has made its *prima facie* showing of jurisdiction, the court must "resolve any factual disputes in the plaintiff's favor." *Id.*

Nutramax claims federal jurisdiction under the Lanham Act's trademark law, 15 U.S.C. § 1121. But the Lanham Act does not provide for nationwide service of process. *See Blueberry Hill LLC v. Shalom Int'l Corp.*, No. 2:17-cv-00385-DS, 2017 WL 5508347, at *2 (D. Utah Nov.

---

[1] Both defendants move to dismiss the complaint with prejudice. *See* ECF Nos. 29 & 30. But personal jurisdiction is an essential element of this court's jurisdiction, without which it is "powerless to proceed to an adjudication." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999) (citation omitted). Therefore, dismissal with prejudice would be contrary to the established rule that dismissals for lack of personal jurisdiction are without prejudice. *Hollander v. Sandoz Pharm. Corp.*, 289 F.3d 1193, 1216 (10th Cir. 2002).

15, 2017). Consequently, the court looks to Utah law for the limits of its jurisdiction over out-of-state defendants. *See* Fed. R. Civ. P. 4(k)(1)(A).

Utah's long-arm statute "should be applied so as to assert jurisdiction over nonresident defendants to the fullest extent permitted by the due process clause of the Fourteenth Amendment to the United States Constitution." Utah Code Ann. § 78B-3-201(3); *accord SII MegaDiamond, Inc. v. Am. Superabrasives Corp.*, 969 P.2d 430, 433 (Utah 1998). Therefore, the court need only address whether the exercise of personal jurisdiction over the defendants comports with due process demands.

"The Supreme Court has held that, to exercise jurisdiction in harmony with due process, defendants must have 'minimum contacts' with the forum state, such that having to defend a lawsuit there would not 'offend traditional notions of fair play and substantial justice.'" *Dudnikov v. Chalk & Vermillion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). A defendant's contacts with the forum state may give rise to either general or specific personal jurisdiction. But Nutramax concedes that Hashtag and Private Label are not subject to general personal jurisdiction in Utah. Therefore, the question is whether those defendants are subject to specific jurisdiction in Utah.

Specific jurisdiction is a two-step inquiry. The court must consider "(a) whether the plaintiff has shown that the defendant has minimum contacts with the forum state; and, if so, (b) whether the defendant has presented a 'compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Old Republic Ins. Co. v. Continental Motors, Inc.*, 877 F.3d 895, 904 (10th Cir. 2017) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–77 (1985)).

## A. MINIMUM CONTACTS

First, the court must consider whether a defendant has sufficient contacts with the forum state. A defendant's contacts with the forum state are sufficient when two requirements are met: (1) "the defendant purposefully directed its activities at residents of the forum," and (2) "the plaintiff's claim arises out of or results from the actions by the defendant himself that create a substantial connection with the forum state." *Pro Axess, Inc. v. Orlux Distribution, Inc.*, 428 F.3d 1270, 1277 (10th Cir. 2005) (citation omitted). Here, both requirements are satisfied.

### 1. Purposeful Direction/Availment

The first consideration in the minimum contacts analysis is whether the defendants purposefully directed activities at residents of the forum. "In the tort context, we often ask whether the nonresident defendant 'purposefully directed' its activities at the forum state; in contract cases, meanwhile, we sometimes ask whether the defendant 'purposefully availed' itself of the privilege of conducting activities or consummating a transaction in the forum state." *Dudnikov*, 514 F.3d at 1071. Regardless of the particular word choice, this "requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or third person." *Burger King*, 471 U.S. at 475 (citations omitted). Instead, jurisdiction is proper "where the contacts proximately result from actions by the defendant *himself* that create a substantial connection with the forum State." *Id.* (citation omitted). Consequently,

> where the defendant deliberately has engaged in significant activities within a State, or has created continuing obligations between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by the benefits and protections of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well.

*Id.* at 475–76.

Here, Nutramax argues that Hashtag and Private Label both have numerous contacts with Utah. Mr. Stephen Weclew, Chief Financial Officer for Private Label, admits by declaration that Private Label entered into an agreement with an entity named Nutra Max Labs Inc. that purported to be a Utah entity. Weclew Decl. 2, ECF No. 30-2. Nutramax filed a copy of that agreement, which was signed and dated on June 15, 2017. *See* Ex. C, ECF No. 44-3. Mr. Weclew testifies that under the agreement, Private Label "filled bottles of supplement products for Nutra Max Labs, including Steelcut Testosterone and Muscle Boost XT and put labels on the products, which were provided by Nutra Max Labs with the Nutra Max Labs name already on them." Weclew Decl. 3, ECF No. 30-2. Thereafter, Private Label shipped the products to a Utah address. Mr. Weclew further testifies that, "[o]ver a three month period, Private Label shipped a total of about 10 shipments to Spinzar Fulfillment for Nutra Max Labs and never shipped product to any other entity or end users." *Id.* In exchange for these services, Nutra Max Labs paid Private Label $72,916.94 in 2017. *Id.*[2]

---

[2] There is some debate as to whether Hashtag participated in this agreement. Though Hashtag and Private Label insist that the agreement was between Private Label and Nutra Max Labs, the agreement itself indicates that it is "between Hashtag Fulfillment, LLC., a Florida corporation with offices located at 3130 Tyrone Blvd, St. Petersburg, FL 33710 (HASHTAG FULFILLMENT), and Nutra Max Labs Inc (CLIENT)." Ex. C 1, ECF No. 44-3. And it is signed by Sam Mallah of Hashtag Fulfillment, LLC and Kaleem Khan of Nutra Max Labs Inc.

In addition, Nutramax submitted a number of emails, invoices, bills of lading, an item activity report, and other documentation of the course of conduct between Private Label, Hashtag, and Nutra Max Labs. *See* Ex. D, E, F, ECF Nos. 44-4, 44-5, 44-6. The emails show that individuals at Private Label reviewed and edited labels for Nutra Max Labs, but many of the emails regarding shipping were addressed to and from the "@hashtagfulfillment.com" domain and included Hashtag's logo.

Resolving factual disputes in Nutramax's favor, the court must, at this juncture, accept Nutramax's view as correct: both Hashtag and Private Label contracted to perform services for Nutra Max Labs.

Hashtag and Private Label's contract with a Utah entity cannot alone automatically establish sufficient minimum contacts. *See Burger King*, 471 U.S. at 478. But that does not render the existence of such a contract irrelevant. Instead, a contract must be considered alongside prior negotiations, contemplated future consequences, the terms of the contract, and the parties' actual course of dealing. *Id.* Indeed, "[t]he Supreme Court has upheld the assertion of jurisdiction over defendants who have purposefully reached out beyond their State and into another by, for example, <u>entering a contractual relationship that envisioned continuing and wide-reaching contacts in the forum State</u>." *Old Republic*, 877 F.3d at 905 (citations and alterations omitted) (emphasis added).

The invoices, bills of lading, and item activity report submitted by Nutramax show that Hashtag shipped thousands of units from its location in St. Petersburg, Florida to Nutra Max Labs in Bluffdale, Utah. A June 23, 2017 bill of lading shows that Hashtag shipped 1,230 lbs. of "vitamins" to Bluffdale. And a July 6, 2017 bill of lading shows that Hashtag shipped another 1,000 lbs. of "vitamins" to Bluffdale. The labels for those supplements contained this note:

> **Manufactured in USA for:**
> Nutra Max Labs Inc.
> www.nutramax-labs-inc.com
> P.O. BOX 23793 Saint Petersburg
> FL 33742.

*See* Ex. D 18, ECF No. 44-5. Mr. Weclew testifies that the labels contained Private Label's St. Petersburg address—rather than Nutra Max Labs' Utah address—because "Private Label also handled a small number of returns of the products for Nutra Max Labs." Weclew Decl. 3, ECF No. 30-2.

Not only did Hashtag and Private Label contract with a purported Utah entity to ship thousands of pounds of nutritional supplements to this state over several months, they labeled

those supplements with a return address in Florida, creating a longer, ongoing commitment to handle returns on behalf of Nutra Max Labs. Thus, Private Label and Hashtag's contacts with Utah were not the result of random contacts or the unilateral actions of another party. Instead, they directed their activities at this state, availed themselves of the privilege of conducting business here, and invited continued contact by accepting returns at their Florida address. They should not be surprised that they might be haled into a Utah court as a result of those actions. *See Edizone, LLC v. Asia Focus Int'l Grp., Inc.*, 196 F. Supp. 3d 1222, 1226–27 (D. Utah 2016) (finding minimum contacts where a shoe company sold thirty-seven units to Utah residents over the course of three-and-a-half years).

   2. **Arising Out Of**

The second consideration in the minimum contacts analysis is whether the parties' contacts with the forum state give rise to the plaintiff's claim. "In order for a court to exercise specific jurisdiction over a claim, there must be an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State." *Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, 137 S. Ct. 1773, 1781 (2017) (citation and alterations omitted). "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Id.*

"Many courts have interpreted [the 'arising out of'] language to require some sort of causal connection between a defendant's contacts and the suit at issue." *Dudnikov*, 514 F.3d at 1078. But the precise causal connection required is a subject of significant debate. For example, the Ninth Circuit has "interpreted the phrase 'arise out of' as endorsing a theory of 'but-for' causation." *Id.* (citing *Mattel, Inc. v. Greiner & Hausser GmbH.*, 354 F.3d 857, 864 (9th Cir. 2003)). But the First Circuit has "required proximate cause to support the exercise of specific

jurisdiction." *Id.* (citing *Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 142 F.3d 26, 35 (1st Cir. 1998)).

In *Dudnikov*, the Tenth Circuit rejected a third approach, but it has yet to choose between the "but-for" and "proximate cause" approaches taken by its sister circuits. *See Dudnikov*, 514 F.3d at 1079 ("As between the remaining but-for and proximate causation tests, we have no need to pick sides today."); *Employers Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1161 (10th Cir. 2010) ("We also need not elect in this case between the proximate-cause and but-for-causation approaches."); *Newsome v. Gallacher*, 722 F.3d 1257, 1270 (10th Cir. 2013) ("We have so far refused to choose one test over the other, and we still need not pick between the two to resolve this case."). Fortunately, this court is not required to choose between the two approaches in this case because the more restrictive analysis is satisfied.

Under the proximate-cause approach, courts must "examine whether any of the defendant's contacts with the forum are relevant to the merits of the plaintiff's claim." *Id.* (quoting *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 319 (3d Cir. 2007)) (alteration omitted). Here, Nutramax's first claim against Hashtag and Private Label is for trademark infringement. To prevail on this claim, Nutramax must prove: (1) Nutramax holds a valid mark entitled to protection; (2) the defendants used the mark; (3) in commerce; (4) in connection with the sale or distribution of goods or services; (5) without Nutramax's consent; and (6) defendants' use of a similar mark is likely to cause confusion. *See Gym Door Repairs, Inc. v. Young Equipment Sales, Inc.*, 206 F. Supp. 3d 869, 900 (S.D.N.Y. 2016); 15 U.S.C. § 1114(1)(a). The fourth element requires Nutramax to show that Hashtag and Private Label used the offending mark in connection with the sale or distribution of goods or services. Consequently, Hashtag and Private Label's shipments of thousands of pounds of supplements featuring an allegedly

8

infringing mark is highly relevant to the merits of Nutramax's copyright infringement claim. Thus, the proximate-cause approach is satisfied.

## B. TRADITIONAL NOTIONS OF FAIR PLAN AND SUBSTANTIAL JUSTICE (REASONABLENESS)

Nutramax has met its burden of establishing minimum contacts. However, "we must still inquire whether the exercise of personal jurisdiction would offend traditional notions of fair play and substantial justice." *Old Republic*, 877 F.3d at 908 (citation and alteration omitted). When a party has the requisite minimum contacts with the forum state, "it is incumbent on defendants to present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Dudnikov*, 514 F.3d at 1080 (citation omitted).

Whether jurisdiction is reasonable depends on five factors: "(1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental social policies." *Pro Execc, Inc. v. Orlux Distrib., Inc.*, 428 F.3d 1270, 1279–80 (10th Cir. 2005). Here, the defendants have not presented a compelling case that these considerations render jurisdiction unreasonable.

### 1. Burden on the Defendant of Litigating in the Forum

The first factor concerns the burden on the defendant of litigating in a foreign forum, which "is of primary concern in determining the reasonableness of personal jurisdiction." *Benton v. Cameco Corp.*, 375 F.3d 1070, 1079 (10th Cir. 2004). Litigating in a foreign forum places an obvious burden on defendants, but "modern transportation and communication have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity." *Pro Axess, Inc.*, 428 F.3d at 1280 (citing *Burger King*, 471 U.S. at 474).

This factor is of primary concern, but the defendants' cursory, one-sentence argument is not compelling. Hashtag and Private Label argue only that they are not based in Utah and that they have no operations or employees in Utah. They fail to explain how the burden imposed on them by litigating in Utah is any greater than that imposed on most any other foreign corporation. Both companies have demonstrated their ability to conduct business in Utah over the telephone and by email. And they have made no attempt to argue that conducting litigation in a similar fashion would be burdensome. Consequently, the defendants have not presented a compelling case that the burden imposed on them would render jurisdiction unreasonable.

2. **Forum State's Interest in Resolving Dispute**

The second factor considers that "[s]tates have an important interest in providing a forum in which their residents can seek redress for injuries caused by out-of-state actors." *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1096 (10th Cir 1998). However, forum states have reduced interest in providing a forum for dispute resolution when their residents are not involved and the forum state's laws will not be applied. *See Sleepy Lagoon, Ltd. v. Tower Grp., Inc.*, 809 F. Supp. 2d 1300, 1310 (N. D. Okla. 2011) (citing *OMI Holdings*, 149 F.3d at 1096).

With respect to this consideration, the defendants make a somewhat stronger case. They point out that the party seeking redress is a resident of South Carolina—not Utah. Also, only one of Nutramax's five claims involves a Utah statute, and that state-law claim is duplicative of Nutramax's federal claims. Furthermore, neither Hashtag nor Private Label is a Utah entity, and none of the allegedly infringing products were shipped to end users in Utah. In other words, Utah has no particular interest in resolving Nutramax's claims against Hashtag and Private Label. Consequently, this factor weighs against exercising jurisdiction.

### 3. Plaintiff's Interest in Receiving Convenient and Effective Relief

"The third step in [the] reasonableness inquiry hinges on whether the [p]laintiff may receive convenient and effective relief in another forum," and "[t]his factor may weigh heavily in cases where a [p]laintiff's chances of recovery will be greatly diminished by forcing him to litigate in another forum because of that forum's laws or because the burden may be so overwhelming as to practically foreclose pursuit of the lawsuit." *OMI Holdings*, 149 F.3d at 1097.

Regarding this factor, the defendants argue only that Nutramax could pursue this action in Florida. But the court finds this argument entirely unpersuasive. Of course, a plaintiff may always pursue an action in a defendant's home state. But that is not the relevant inquiry.

Requiring Nutramax to litigate its dispute with Hashtag and Private Label in another forum would effectively create duplicative litigation and significantly complicate Nutramax's ability to obtain convenient and effective relief. Because Spinzar likely is not subject to personal jurisdiction in Florida, Nutramax would have to litigate one suit in Florida against Hashtag and Private Label, and one suit in Utah against Spinzar. Such a result would, of course, be "anything but convenient." *Concur-Texas, L.P. v. Duradril, LLC*, No. 2:14-cv-00218, 2014 WL 5682504, at *6 (D. Utah Nov. 4, 2014). Thus, the defendants have not presented a compelling case that this factor weighs against jurisdiction.

### 4. Interstate Judicial System's Interest in Obtaining Efficient Resolution

The fourth factor considers whether the forum state is the most efficient place to litigate the dispute. *See Pro Axess,* 428 F.3d at 1281. Efficiency depends upon the location of witnesses, the location of the underlying wrong, which forum's substantive law governs the case, and whether jurisdiction is necessary to prevent piecemeal litigation. *Id.*

The defendants' brief argument regarding this factor fails to address the relevant concerns. The defendants do not discuss the location of witnesses, the location of the underlying wrong, or any substantive law. They omit entirely any discussion of piecemeal litigation—presumably because litigating against them in Florida would produce precisely that result. Consequently, the defendants have failed to make a compelling case that this factor weighs against jurisdiction.

### 5. States' Interest in Furthering Fundamental Substantive Policies

Finally, the fifth factor asks whether the exercise of personal jurisdiction by the forum state affects the "substantive social policy interests of other states or foreign nations." *Asahi Metal Indus. Co. v. Superior Court of California*, 480 U.S. 102, 115 (1987); *OMI Holdings*, 149 F.3d at 1097. Neither party has identified any substantive social policy interests that might be implicated by the exercise of jurisdiction, and the court finds that no social policy of any state will be affected by whether this case is heard in Utah or Florida.

### 6. Conclusion

In sum, only the second factor weighs against exercising jurisdiction. The defendants have not met their burden to present a compelling case with regard to the other factors. Consequently, exercising jurisdiction over Hashtag and Private Label in this action would not be unreasonable and would therefore not violate the Due Process Clause of the Fourteenth Amendment.

### III. ORDER

For the reasons above, Hashtag and Private Label's motions to dismiss for lack of personal jurisdiction (ECF Nos. 29, 30) are **DENIED**.

Signed June 14, 2018

                      BY THE COURT

                      _____

                      Jill N. Parrish
                      United States District Court Judge